IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| CAMERON MCBRYDE,<br><br>Plaintiff,<br><br>vs.<br><br>CRAIG THOMAS, FERN OSLER, JULIE THOMAS, MEAGHAN SHONE, TIM KRUMB, NEXUS TREATMENT CENTER, COMMUNITY CORRECTIONS AND COUNSELING SERVICES, HOWARD LAMELY, and DERRICK GIBBS,<br><br>Defendants. | CV 12-76-H-DLC-RKS<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO DENY DEFENDANTS CCCS, NEXUS TREATMENT CENTER, HOWARD LAMELY AND DEREK GIBBS' MOTION FOR SUMMARY JUDGMENT |

**Synopsis**

Plaintiff Cameron McBryde is a prisoner proceeding in forma pauperis. His Amended Complaint alleges Defendants violated the Establishment Clause of the United States Constitution when the Parole Board conditioned parole on Mr. McBryde's successful completion of the Nexus Program which he contends required him to acknowledge a higher power. Defendants Community Corrections and Counseling Services (CCCS), Nexus Treatment Center, Howard Lamely and Derek Gibbs (hereinafter for purposes of this motion "Defendants") have moved for summary judgment on the grounds that Mr. McBryde did not exhaust the

1

available grievance procedure and that they are not state actors who can be sued under 42 U.S.C. § 1983.

Because Defendants are state actors for purposes of § 1983 analysis and the Nexus grievance procedure does not limit the time Mr. McBryde had to attempt to verbally resolve his grievances, Defendants' motion should be denied.

## Jurisdiction

Mr. McBryde filed suit in federal court, in the Helena Division of the District of Montana. (Doc. 2.) Venue is proper, as Mr. McBryde is suing members of the parole board which is located in Lewis and Clark County, Montana. Local Rule 1.2(c)(3). The Complaint alleges violations of the Establishment Clause of the First Amendment of the United States Constitution which invokes federal question jurisdiction. 28 U.S.C. § 1331. The Court has personal jurisdiction over the parties, all of whom are found in Montana. Fed. R. Civ. P. 4(k)(1)(A); Mont. R. Civ. P. 4(b). The case is assigned to the Hon. Dana L. Christensen, Chief United States District Court Judge and referred to the undersigned. (Doc. 23); Local Rule 72.2(a)(1).

## Status

Mr. McBryde filed a Complaint on August 17, 2012. (Doc. 2.) After the review required by 28 U.S.C. §§ 1915, 1915A, the Complaint was served upon

Defendants. (Doc. 8.) Defendants filed an Answer on January 30, 2013. (Doc. 19.) On May 17, 2013, Defendants filed an Amended Answer (Doc. 29), a Motion for Summary Judgment (Doc. 31), and a notice informing Mr. McBryde of the potentially dispositive motion. (Doc. 30.) Mr. McBryde responded (Doc. 34) and Defendants filed a reply. (Doc. 41.) The Motion for Summary Judgment is now fully briefed and ripe for review.

## Standards

### Summary Judgment

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a.). The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Once the moving party has made a prima facie showing that it is entitled to summary judgment, the burden shifts to the opposing party to show the existence of a genuine issue of material fact. *Id*.

### 42 U.S.C. § 1983 State Action Requirement

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show

that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Private individuals act under color of state law only when their conduct is fairly attributable to the state. *Lugar v. Edmundson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). To be considered as acting under color of state law, "the defendant . . . [must] have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *West*, 487 U.S. at 49 (*quoting United States v. Classic*, 313 U.S. 299, 326 (1941)). A private party's actions are fairly attributable to the State is whether the "private actor has assumed a traditionally public function." Under the public function test, the relevant question is "whether the function performed has been traditionally the exclusive prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982).

The operation of a private prison facility is "fairly attributable to the state" because it is "caused by the exercise of the state's exclusive power to incarcerate prisoners." *Knows His Gun v. Montana*, 866 F.Supp.2d 1235, 1244 (D.Mont. 2012) *citing Rendell–Baker v. Kohn*, 457 U.S. 830, 842 (1982)(imprisonment is "traditionally the exclusive prerogative" of government); *West*, 487 U.S. at 49–51, 57 (a private prison's power to engage in this public function is "possessed by virtue of state law and made possible only because [it] is clothed with the authority

4

of state law"); *see also Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001); *Coronel v. Paul*, 225 Fed.Appx. 575 (9th Cir. 2007); *Radi v. MacDonald*, 143 Fed.Appx. 805 (9th Cir. 2005).

**Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). This means a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth,* 532 U.S. at 741.

**Allegations in Complaint**

Mr. McBryde contends Defendant Derrick Gibbs, a treatment staff member with the Nexus Program and Defendant Howard Lamely, Director of the Nexus Program coerced him to participate in religious activities to which he objected by

5

making the program the only alternative to prison. (Complaint, Doc. 2 at 6, ¶ IV(A)(2).) Within a few days of Mr. McBryde's arrival at Nexus he met with Mr. Gibbs and complained that he was not comfortable with AA/NA[1] discussions and teachings about "God" and "Higher Power" and that they were against his religion. (Complaint, Doc. 2 at 7.) He alleges that throughout his time at Nexus, Mr. Gibbs continuously threatened him with prison if he did not show outward signs that he accepted the AA/NA teachings about God, higher powers, powerlessness, and spirituality and participate fully in the various religious activities at Nexus. (Complaint, Doc. 2 at 7-8.) Mr. McBryde alleges Director Lamely interviewed him about his religious views on salvation and other theological concepts and informed him he would be sent back to prison if he did not embrace the Nexus program teachings. (Doc. 2 at 8.)

**Undisputed Facts**

On February 25, 2010, Mr. McBryde was sentenced to the custody of the Montana Department of Corrections for a term of 15 years, with 10 years suspended. (Statement of Undisputed Facts, Doc. 32 at ¶ 1.) On January 3, 2012, Mr. McBryde was admitted to the Nexus Program for treatment for chemical

---

[1] Presumably Mr. McBryde is referring to Alcoholics Anonymous and Narcotics Anonymous but these terms were not defined in the Complaint.

dependency. (Statement of Undisputed Facts, Doc. 32 at ¶ 5; Nexus Treatment Summary, Doc. 32-12 at 1.) The Nexus Program is a state contractor. (Statement of Undisputed Facts, Doc. 32 at ¶ 3.) Upon his admission to Nexus, Mr. McBryde was presented with, and acknowledged receipt of, various documents. These included the Nexus Family Member Grievance Procedure and the listing of Nexus Program Family Member "Rights." (Statement of Undisputed Facts, Doc. 32 at ¶¶ 6, 9). Mr. McBryde also signed the Informed Consent for Treatment (Doc. 32-5) and the Teaching and Therapeutic Community Resident Agreement (Doc. 32-6). (Statement of Undisputed Facts, Doc. 32 at ¶¶ 7, 8.)

Mr. McBryde was terminated from the Nexus program on March 26, 2012. (Statement of Undisputed Facts, Doc. 32 at ¶ 11.) CCCS/Nexus has no legal authority to sentence Mr. McBryde. (Statement of Undisputed Facts, Doc. 32 at ¶ 13).

Mr. McBryde asked Mr. Gibbs if he could speak with an administrative representative or have access to a grievance procedure regarding the religious material. Mr. Gibbs told Mr. McBryde that the Nexus program was based on AA and his complaint was "not grievable." Mr. Gibbs told Mr. McBryde that the Clinical Director would be the one answering such grievances and that Mr. Gibbs would arrange for a meeting with the Clinical Director where Mr. McBryde would

7

be asked to sign out of Nexus if he chose to complain about the religious materials at Nexus and he would be sent to prison. Mr. McBryde contends Defendants Lamely and Gibbs assured him that if he was removed from Nexus for contesting the religious material he would do all his time in prison. He contends he was never given access to an available remedy due to these threats and misrepresentation of his issue being "not grievable." (McBryde Declaration, Doc. 34-1 at 3, ¶ 9.)

## Arguments

**Defendants' Motion for Summary Judgment**

Defendants first argue judgment should be entered in their favor because Mr. McBryde's claims were never presented during any grievance procedure prior to the filing of his claims.

Second, Defendants argue they are not state actors because the Nexus program is a treatment facility to which inmates may apply voluntarily and it does not provide "prison" services within the setting of the governmental unit. (Defendants' Reply, Doc. 41 at 2.) Defendants argue treatment at Nexus is voluntary, Mr. McBryde was not compelled by Nexus to agree to treatment, and he had the ability to quit the program. They argue they had no ability to take any action against Mr. McBryde other than to hold him to his voluntarily entered contract with them. Further, they contend they had no legal ability to affect the

sentence given to Mr. McBryde or affect any disposition of him within the Montana criminal justice parole and probation program. (Defendants' Summary Judgment Brief, Doc. 33 at 11-12.)

**Mr. McBryde's Arguments**

Mr. McBryde alleges that he complied with the grievance process by making verbal attempts to address his issues and that he was denied access to further steps by being removed from Nexus and not provided with access to the grievance process. (McBryde Declaration, Doc. 34-1 at 3-4.)

Mr. McBryde argues that Nexus is a state actor because it is a contractor who is responsible for the care, custody, incarceration, treatment, and discipline of inmates. (McBryde Response, Doc. 34 at 6.)

**Analysis**

**State Action**

The Nexus Program is a residential treatment program performing the traditionally exclusive public function of incarcerating prisoners under contract with the State of Montana. Inmates in the Nexus program are not free to leave and are subject to removal from the Nexus Program to be placed back with the Montana Department of Corrections. (Nexus Program Referral, Doc. 32-2.) Upon entering Nexus, Mr. McBryde was required to sign a document acknowledging

9

that: "I continue to be an inmate, and I recognize that any unauthorized absence from the program constitutes Felony Escape, which carries a 10-year consecutive sentence." (Nexus Program Referral, Doc. 32-2.)

In *Lemoine v. New Horizons Ranch and Center, Inc.*, 990 F.Supp. 498 (N.D.Tex. 1998), the court held that a private juvenile residential treatment center was a state actor for purposes of the plaintiff's section 1983 claim. *Id.* at 501. The court held that the residential facility was a state actor for § 1983 analysis purposes because its residents, like inmates in a prison, were subject to 24–hour care and supervision, sent to the facility by the state, and held on an involuntary basis. *Id.* at 502.

Like in *Lemoine,* the Nexus Program is a 24-hour residential facility under contract with the State of Montana to house inmates where the inmates/"family members" were not free to leave, were under the 24-hour care and supervision of the staff at the Nexus Program, were sent to the facility by the state, and were held on an involuntary basis. Although Defendants describe the program as "voluntary," Mr. McBryde was not free to walk out of the facility. If he did so he would be charged with felony escape. While he may have voluntarily consented to treatment, he was still in custody while at the program.

Whether or not substance abuse treatment for inmates is a traditionally

exclusive public function, the incarceration of inmates clearly is. Nexus was responsible for the incarceration of Mr. McBryde while they provided drug treatment. The State of Montana delegated this responsibility to Defendants. Defendants house and provide security for individuals who have been convicted of crimes and sentenced to a term of imprisonment. These are functions typically attributed to the state. As such, the Nexus Defendants are state actors for purposes of § 1983.

### B. Administrative Remedies

Nexus provided Mr. McBryde with the "Family Member Grievance Procedure" which provided that offenders were encouraged to resolve grievances/problems on an informal basis by attempting to speak to the person with whom they had a problem. If that failed, then the offender was directed to enlist the aid of another staff person. If the matter could not be resolved at that level the offender was to "direct the grievance to the Grievance Coordinator for an informal resolution." (Family Member Grievance Procedure, Doc. 32-7 at 1.) If the matter was still not resolved, then the offender was to request a grievance procedure form and initiate a written grievance. The grievance would be given to either the Treatment Supervisor or the Security Coordinator for investigation. The Grievance Coordinator would then investigate the matter and respond, in writing, to the

offender within 10 working days. If the grievance was still unresolved, the offender could submit an appeal to the Program Administrator, who would investigate the situation, make a decision, and respond within 10 working days. The offender could then continue the appeal process, in writing, to the Director of Treatment Services. The Director of Treatment Services was to respond in writing within 10 working days. *Id.*

Mr. McBryde contends he was attempting to verbally resolve his complaints when he was transferred out of the Nexus program. The process outlined above does not impose a deadline for attempting to speak with the person to whom the problem was directed or for enlisting the aid of another staff person. The only provision concerning timing involves the timing for a response from Nexus officials.

As set forth above, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules." *Woodford*, 548 U.S. at 88. But here, Mr. McBryde did not fail to properly exhaust his administrative remedies because the Nexus grievance procedure did not contain a time limit for filing any such grievance. He did not file a written grievance regarding his objections to the treatment program before he was transferred to Montana State Prison, but under the Nexus Grievance Procedure he did not need to. This absence

12

of a deadline distinguishes this case from *Woodford*, which involved an inmate who submitted an administrative complaint outside the time allowed under his prison's policy. *Woodford*, 548 U.S. 81.

Mr. McBryde argues he did not have access to a grievance process for his Nexus concerns after he was removed from the program and returned to prison. (McBryde's Response Brief, Doc. 34 at 2.) An inmate's failure to exhaust administrative remedies may be excused where "circumstances render administrative remedies effectively unavailable." *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (holding that inmate's failure to exhaust his administrative remedies was excused because he took reasonable steps to exhaust his claim and was precluded from exhausting, not through his own fault but by the Warden's mistake). This issue was not addressed by Defendants. Without additional evidence, it is not possible to determine whether Mr. McBryde had available administrative remedies to grieve the issues at the Nexus Program once he was returned to prison.

The motion for summary judgment based upon failure to exhaust should be denied.

It is **RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 31) be denied.

# NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date these Findings and Recommendations are served which is the date entered as indicated on the Notice of Electronic Filing. Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Any objections must itemize each factual finding to which objection is made and must identify the evidence in the record relied upon to contradict that finding. In addition, the parties must itemize each recommendation to which objection is made and must set forth the authority relied upon to contradict that recommendation.

Failure to assert a relevant fact or argument in objections to these Findings and Recommendations may preclude the parties from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.

Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 7th day of November, 2013.

            */s/ Keith Strong*
            Keith Strong
            United States Magistrate Judge